UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE V.E.,

              Petitioner,

     v.

WARDEN OF THE MESA VERDE
DETENTION FACILITY,

              Respondent.

No. 1:26-cv-01171-TLN-JDP

A # 240-464-909

**ORDER**

This matter is before the Court on Petitioner Jose V.E.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 7).[1]  Respondent filed an opposition.  (ECF No. 9.)  Petitioner replied.  (ECF No. 10.)  For the reasons set forth below, the Court issues a TRO requiring Respondent to IMMEDIATELY RELEASE Petitioner.  Respondent is further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

///

///

///

///

///

---

[1]  Since Petitioner's initial filing of his habeas petition, the Court appointed counsel who is now enrolled in this case and filed a reply on behalf of Petitioner.  (ECF Nos. 7, 10.)

1

## I.   FACTUAL BACKGROUND

Petitioner was proceeding *pro se* at the time he filed his Petition for Writ of Habeas Corpus.  There are not many facts set forth in the Petition.  (*See* ECF No. 1.)  On January 18, 2026, Petitioner was leaving his house to take a friend home when U.S. Immigration and Customs Enforcement ("ICE") arrived.  (*Id.* at 5.)  The ICE agents told Petitioner to get out his car and arrested him.  (*Id.*)  Petitioner was then transferred to a detention center.  (*Id.* at 6.)

On February 10, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking immediate release. (*See id.*)  On February 12, 2026, the Court issued an Order construing Petitioner's *pro se* request for injunctive relief as a motion for TRO and ordered Respondent to file a response.  (ECF No. 7.)  In response, Respondent filed an opposition.  (ECF No. 9.)  Petitioner filed a reply.  (ECF No. 10.)

On March 3, 2026, the Court ordered Respondent to file relevant portions of Petitioner's A-File and any and all available records related to Petitioner's allegations, as Respondent failed to file these records as the Court previously ordered.  (ECF No. 7 at 2; ECF No. 11.)  Respondent then filed responsive records (ECF No. 12) and the Court provided the parties an opportunity to file supplemental briefing as the records were not previously available to Petitioner prior to the filing of his reply (ECF No. 14).  On March 11, 2026, Petitioner filed supplemental briefing. (ECF No. 15.)

## II.   STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious

questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.      Likelihood of Success on the Merits

Petitioner establishes a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause. The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

##### i.      Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

3

the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that he has a protected liberty interest. It appears from Petitioner's A-File and documents that Petitioner entered at an "unknown date" and "unknown time." (ECF No. 12-1 at 1.) It therefore does not appear that Petitioner ever encountered immigration authorities and was paroled into the United States. Assuming that is the case, nevertheless, courts have found that such individuals still retain a liberty interest in being free from imprisonment, which is "the most elemental of liberty interests." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1160 (D. Nev. 2025) (finding petitioners who entered without inspection and have resided continuously in the United States have a liberty interest in "being free from imprisonment," as "[i]n this country, liberty is the norm and detention 'is the carefully limited exception'" (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *United States v. Salerno*, 481 U.S. 739, 755 (1987); *Rodriguez Diaz*, 53 F.4th 1189, 1207 (9th Cir. 2022)). Thus, Petitioner has a clear interest in his continued freedom.

Respondent's sole argument in opposition to a TRO is that, at the time of Petitioner's arrest, he was subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission."[2] (ECF No. 9 at 1–2.) This Court has now ruled on this same issue

[2] Respondent also requests the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) and *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464 (E.D. Cal. Aug. 15, 2025). (ECF No. 9 at 2.) The Court denies this request. As discussed below, the Court finds Petitioner is likely to succeed on the merits of his claim and the Court will not delay injunctive relief on the prospective chance a pending appeal could change

countless times and courts throughout the Ninth Circuit have overwhelmingly rejected Respondent's legal position to find the government's re-classification of individuals under the mandatory detention policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts. Respondent provides no such grounds for reconsideration. (*See* ECF No. 9.) Thus, at the time of Petitioner's detention, Petitioner was not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum. Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

ii.      *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As previously noted, Petitioner has a private interest in "being free from imprisonment." *Escobar Salgado*, 809 F. Supp. 3d at 1160. Further, this private interest "is not diminished by any final order of removal, or the availability of any existing process to change Respondent['s] decision to

---

this outcome.

detain them without bond." *Id.* (citing *Rodriguez Diaz*, 53 4th at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional procedures available to him through a further bond hearing before an IJ upon a showing of materially changed circumstances)).  Petitioner also asserts he shares a cell with many people where privacy is not respected, there are many sick people with different viruses, and the doctors treat them badly.  (ECF No. 1 at 6.)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Indeed, Petitioner notes that he has been detained since January 18, 2026, and has not received an individualized evidentiary hearing before a neutral adjudicator.  (ECF No. 1 at 5, 11–12.)  Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up)).

Here, Respondent does not argue that Petitioner is a danger to the community or a flight risk.  (*See generally* ECF No. 9.)  Therefore, on the record before the Court, at the time Respondent detained Petitioner, Respondent had no legitimate interest.  Moreover, the cost and time of procedural safeguards are minimal here.  Notice and custody hearings are routine

processes for Respondent with minimal burden.  Indeed, these are the very processes that were owed to Petitioner under § 1226(a).  Any delay in re-detention (if justified) for time to provide notice and a hearing would have been minimal.  It is also less of a fiscal and administrative burden for Respondent to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

In balancing the government's interest in effectuating immigration laws against the considerable potential for erroneous deprivation and Petitioner's liberty interest, the Court finds that Petitioner was entitled to notice and a hearing at minimum.  Respondent did not provide either.  Nor did they provide a post-deprivation bond hearing as required under § 1226(a).  Thus, Petitioner has shown he is likely to succeed on the merits of his due process claim.

B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  As previously stated, Petitioner notes that he shares a cell with many people where privacy is not respected, there are many sick people with different viruses, and the doctors treat the detainees badly.  (ECF No. 1 at 6.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioner has sufficiently established irreparable harm.

///

///

7

C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondent to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED;

2. Respondent must IMMEDIATELY RELEASE Petitioner Jose V.E. from custody under the same conditions he was released prior to his current detention.  Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. **Respondent must file a notice**

**certifying compliance with this provision of the Court's Order within two days of the electronic filing date of this Order**;

3. At the time of release, Respondent must return all of Petitioner's documents and possessions;

4. Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

5. Now that Petitioner has Court-appointed counsel, Petitioner may supplement or amend his Petition for Writ of Habeas Corpus **within seven days of the electronic filing date of this Order**;

6. Respondent is ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner.  Respondent shall file responsive papers **within ten days of the electronic filing date of this Order**.  Petitioner may file a reply, if any, **within thirteen days of the electronic filing date of this Order**.  **The parties shall indicate in their briefing whether they request a hearing**.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 19, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9